**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robyn E. Ryba,<br><br>    Plaintiff,<br><br>vs.<br><br>Town of Marana, et al.<br><br>    Defendants. | No. 4:16-CV-780-CKJ<br><br>**ORDER** |

Pending before the Court is the Motion for Partial Summary Judgment (Doc. 34) filed by Defendants Town of Marana ("Marana") and Cesar Nelson ("Nelson") (collectively, "Marana Defendants"). Plaintiff Robyn E. Ryba ("Ryba") has filed a response (Doc. 36) and Marana Defendants have filed a reply (Doc. 38).

Oral argument has been requested. However, the issues are fully presented in the briefs and the Court finds it would not be assisted by oral argument. The Court declines to schedule this matter for oral argument. LRCiv 7.2(f).

Partial summary judgment will be granted in favor of Defendants and against Plaintiff for the reasons stated herein.

I. *Factual and Procedural Background*

At approximately 10:54 p.m. on June 14, 2015, Officer Nelson of the Marana Police Department was dispatched to check on a suspicious vehicle reported near 5448 W. Mosquito Drive, in Marana. When Nelson approached the vehicle, he noticed that the windshield

wipers and left-turn signal were on. The parties dispute whether the engine was on.[1] Nelson observed Ryba sitting in a curled up position, asleep in the driver's seat. Ryba's legs were tucked up in the seat and she was facing right. Ryba asserts that the vehicle had a push ignition switch that needed a fully engaged clutch to start,[2] which Ryba asserts is not possible with her feet tucked beneath her while she was asleep. Ryba also asserts her windshield was dusty and that the wipers were on to remove the dust. During her deposition, Ryba could not say for certain whether her headlights were on, but testified that the radio was on, and the fan was blowing air, although the air conditioning was not operating.

When Nelson tapped on the driver's window, Ryba did not respond; Nelson tapped harder, but Ryba still did not respond. Nelson then used his flashlight to tap on the window. Nelson detected a strong odor of intoxicants within the vehicle. Nelson asked Ryba if she had anything to drink that night, to which she responded, no, then yes. Nelson included in his report that Ryba exhibited signs of intoxication, including red, watery, bloodshot eyes, slurred speech, and disorientation.

After Ryba stepped out of the vehicle at Nelson's request, Nelson conducted the horizontal gaze nystagmus ("HGN") test, which resulted in 6 out of 6 cues being observed. Nelson also noted a strong odor of intoxicants emanating from Ryba's mouth as she spoke, that Ryba was unsteady in her gait, that Ryba had a side to side sway as she stood still, and that he had to repeat his instructions to her numerous times.

Nelson asked Ryba if she would agree to perform field sobriety tests, to which she consented. Nelson reported that Ryba then began asking questions and not following instructions. Nelson asserts he placed Ryba under arrest for DUI after numerous attempts

---

[1] Another officer from the Marana Police Department Officer arrived during the investigation and took a photograph of the instrument panel of Ryba's vehicle. The photograph indicates the engine was idling at just less than 1000 RPM, with the engine at operating temperature.

[2] The vehicle used an "Intelligent Key," similar to a USB thumb drive, which is pushed into an "Intelligent Key port" instead of a standard keyed ignition switch. The "Intelligent Key" was in the "Intelligent Key port" when Ryba was approached by Nelson.

to have her conduct the test and Ryba refusing to follow his instructions. Ryba asserts she was attempting to follow Nelson's instructions regarding the field sobriety tests, but she sought clarification on what he was asking her to do. Ryba testified at deposition that she felt like Nelson was manipulating her and asking her to do something different. She further testified that she felt as if she "just kind of fed into his demeanor that he had with me, none of this would have happened anyways" . . . stating she felt "I don't care if you are a cop; you can't---like, I don't have to flirt with you, then the whole thing changed." (Depo. of Ryba, p. 80).

Ryba asserts that, after Nelson had handcuffed her, Nelson inappropriately "grabbed" her with enough force to cause bruising to Ryba's right breast.

Ryba was then transported to the Marana Police Department Substation, where her blood was eventually drawn. Analysis of the blood revealed it to contain $0.249 \pm 0.013$ grams of ethanol per 100 ml of blood, which is more than three times the legal limit of 0.08. Ryba asserts Nelson did not attempt to get her written consent to a blood draw until after it had been completed. Nelson's report indicates that Ryba was struggling and delaying the test; the technician drawing blood reported that Ryba consented to the blood draw, was very apprehensive, was gagging and crying, but told the technician to "just do it." (Nelson's Police Report, p. 9). Ryba also points out that Nelson did not afford her sufficient time to read the Administrative Pro Se document, so she wrote she needed to read it on the form, to which Nelson responded that Ryba was going to jail.

Ryba did not report the alleged excessive force or inappropriate touching to anyone at the Marana Police Department Substation or at the Pima County Jail, and did not tell anyone about it until a few days later.

Ryba was tried for violation of A.R.S. § 28-1381(A)(1), which makes it unlawful for a person "to drive or be in actual physical control of a vehicle . . . [w]hile under the influence of intoxicating liquor." During the trial, Ryba did not dispute the toxicology report finding her BAC to be 0.249, and did not dispute that she was drunk. Ryba was acquitted by a jury.

Marana Defendants have filed a Motion for Partial Summary Judgment seeking

1  summary judgment on Ryba's Fourth Amendment claims alleging false arrest and malicious
2  prosecution and on Ryba's claims against Marana.

II. *Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Scheuring v. Traylor Bros.*, 476 F.3d 781, 784 (9th Cir. 2007).

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Celotex Corp.*, 477 U.S. at 248 (internal quotes omitted); *see also United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) ("a plaintiff cannot rely on mere allegations but rather must "set forth" by affidavit or other evidence "specific facts"). The nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Further, the disputed facts must be material. *Celotex Corp.*, 477 U.S. at 322-23. Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The dispute over material facts must be genuine. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a

genuine issue for trial. *Id.* "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (citation omitted). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255. Further, in seeking to establish the existence of a factual dispute, the non-moving party need not establish a material issue of fact conclusively in his favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (citation omitted).

III. *Consideration of Admissible Evidence*

The Court is only to consider admissible evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (declarations and other evidence that would not be admissible may be stricken). Moreover, "[a]t the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form. [They] instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

A "genuine" issue of "material" fact cannot be created by a party simply making assertions in its legal memoranda. *Varig Airlines*, 690 F.2d at 1238. Declarations and other evidence that would not be admissible may be stricken. *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991). Additionally, the court is to review the record as a whole, but must disregard evidence favorable to the moving party that the jury is not required to believe and must give credence to the uncontradicted and unimpeached evidence of the moving party, at least "'to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150-51 (2000) (citation omitted).

The Court will only consider the admissible evidence that is supported by specific

facts that may show a genuine issue of material fact. *See Anderson*, 477 U.S. at 248 (1986).

IV. *Probable Cause*

The parties dispute whether probable cause existed for the arrest and prosecution of Ryba. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that [an] offense has been committed." *Henry v. United States*, 361 U.S. 98, 12 (1959); *Peng v. Penghu*, 335 F.3d 970, 976 (9th Cir. 2003). In order to show that the police had probable cause, "the government is required to prove only that 'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *United States v. McCarty*, 648 F.3d 820, 838 (9th Cir. 2011) (citing *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005)); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

"Whether probable cause exists depends on the totality of facts available to the officers, who may not disregard facts tending to dissipate probable cause." *Sialoi v. San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016) (internal quotations and citation omitted). If probable cause exists to make an arrest, the arrest is lawful regardless of the arresting officer's subjective intent. Under *Devenpeck*, the subjective reason that the officer arrests the offender is irrelevant so long as the available facts suggest that the offender was committing a crime. *Tatum v. City Council of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006). Moreover, "[p]robable cause to arrest or detain is an absolute defense to any claim under § 1983 against police officers for wrongful arrest or false imprisonment, as the lack of probable cause is a necessary element of each." *Lacy v. Cty. of Maricopa*, 631 F. Supp. 2d 1183, 1193 (D. Ariz. 2008).

The undisputed facts in this case establish that Ryba was sleeping in a vehicle with its windshield wipers and left-turn signal on, along with the key in the ignition port. Ryba was in a curled up position with her legs tucked up in the seat. Ryba admitted that she had been drinking and exhibited signs of intoxication, including red, watery, bloodshot eyes,

slurred speech, and disorientation. Nelson noted a strong odor of intoxicants emanating from Ryba's mouth, that Ryba was unsteady in her gait, and that Ryba had a side to side sway as she stood still. Further, six out of six cues were observed during the HGN test. Additionally, the defense does not dispute Ryba's assertion that she has consistently asserted she never intended to drive the vehicle, but that she simply went outside to smoke a cigarette and afford some privacy to her friends in the residence.

For purposes of this ruling, the Court also accepts Ryba's disputed facts as follows: the vehicle was not on, Ryba fully cooperated with the field sobriety tests, and that Nelson's instructions as to the field sobriety tests were not clear (i.e., Ryba testified that she felt like Nelson was manipulating her, Nelson asking her to do something different, and that she felt that, since she didn't flirt with Nelson, the whole "thing" changed).

The Court finds probable cause existed to arrest Ryba. The totality of circumstances show that Ryba admitted to having been drinking alcohol and was in a vehicle, with its key in the ignition port. The windshield wipers, left turn signal, radio, fan, and possibly the headlights were on. Ryba showed signs of intoxication and six out of six HGN cues were observed. Although Ryba asserts she never intended to operate the vehicle and was not in a position to even start the vehicle (in light of her legs curled into the seat), "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *D.C. v. Wesby*, — U.S. —, 138 S. Ct. 577, 588 (2018); *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 749, 766 (2005) (police have discretion to determine circumstances of a offense). Rather, the evidence shows that probable cause existed to believe Ryba was intoxicated and in actual physical control of the vehicle. *See e.g. Arizona v. Zaragoza*, 221 Ariz. 49, 52, 209 P.3d 629, 632 (2009) ("totality approach permits drunk drivers to be prosecuted under a much greater variety of situations – for example, even when the vehicle is off the road with the engine not running. The drunk who turns off the key but remains behind the wheel is just as able to take command of the car and drive away, if so inclined, as the one who leaves the engine on . . ."). As probable cause existed to arrest Ryba, Nelson's subjective intent does not alter this conclusion.

Probable cause existed to arrest and prosecute Ryba. Therefore, summary judgment in favor of Marana Defendants and against Ryba as to the false arrest and malicious prosecution claims is appropriate. *See generally Lacy v. Cty. of Maricopa*, 631 F. Supp. 2d 1183, 1195 (D. Ariz. 2008).

V. *Prosecutor's Action*

Marana Defendants also argue that, because it is presumed the prosecutor exercised independent judgment in a prosecution, the malicious prosecution claim against Nelson also fails on that additional independent ground. *Newman v. County of Orange*, 457 F.3d 991, 993 (9 Cir. 2006). While disputed evidence implies that Nelson may have had an improper motive for his actions, neither the disputed nor the undisputed evidence indicates Nelson deliberately supplied misleading information to a prosecutor which would prevent Nelson's protection under this theory. *See e.g. Lacy*, 631 F. Supp. 2d at 1195–96 (citation omitted) ("A prosecutor's decision to charge . . . [or] a prosecutor's decision not to drop charges but to proceed to trial . . . will not shield a police officer who deliberately supplied misleading information that influenced the decision . . ."). The Court finds the prosecutor's decision to proceed with the prosecution of Ryba immunizes Nelson from the malicious prosecution claim. Summary judgment in favor of Nelson and against Ryba on the malicious prosecution claim is appropriate.

VI. *Qualified Immunity*

Qualified immunity protects public officials from liability for damages under § 1983 if their actions did not violate clearly established rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009). To overcome qualified immunity, a plaintiff in a § 1983 action has the burden to show that 1) the facts make out a § 1983 violation of the plaintiff's federal or constitutional rights and 2) the right at issue is clearly established at the time of the alleged misconduct.

The defense of qualified immunity allows for errors in judgment and protects "all but

the plainly incompetent or those who knowingly violate the law . . . [I]f officers of reasonable competence could disagree on the issue [whether or not a specific action was constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity balances the interests of "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223 (2009); *Watkins v. City of Oakland*, 145 F.3d 1087, 1092 (9th Cir. 1998). Moreover, law enforcement officers "who 'reasonably but mistakenly concluded that probable cause is present'" and justifies an arrest are entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987))

Taken in a light most favorable to Ryba, the undisputed facts do not show that Marana Defendants' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Billington v. Smith*, 292 F.3d 1177, 1183 (9th Cir. 2002). Here, the Court has found that the facts, both those undisputed and those construed in the light most favorable to Ryba, establish there was not a violation of Ryba's federal or constitutional rights. In other words, Defendants' conduct did not violate clearly established rights.

Moreover, even if the Court has erred in determining there was probable cause to determine Ryba was in actual physical control of the vehicle, officers of reasonable competence could disagree as to whether probable cause existed to arrest Ryba. For example, the Supreme Court of Arizona has stated:

> [The] totality approach permits drunk drivers to be prosecuted under a much greater variety of situations-for example, even when the vehicle is off the road with the engine not running. The drunk who turns off the key but remains behind the wheel is just as able to take command of the car and drive away, if so inclined, as the one who leaves the engine on. The former needs only an instant to start the vehicle, hardly a daunting task.

*Zaragoza*, 221 Ariz. at 52 (citation omitted). However, the Court has also stated:

> The interpretation we place on the legislature's imprecise language [actual physical control] is compelled by our belief that it is reasonable to allow a driver, when he believes his driving is impaired, to pull completely off the highway, turn the key off and sleep until he is sober, without fear of being arrested for being in control. To hold otherwise might encourage a drunk driver, apprehensive about being arrested, to attempt to reach his destination while endangering others on the highway.

*Arizona v. Zavala*, 136 Ariz. 356, 666 P.2d 456 (1983). While *Zaragoza* is the more recent authority, reasonable officers may determine differently whether probable cause existed. Further, because of the totality of circumstances, reasonable officers could disagree as to whether Ryba was a danger to herself or others. *See Zaragoza*, 182 Ariz. At 326-27. The Court finds Nelson is entitled to qualified immunity on the false arrest and malicious prosecution claims. Summary judgment in favor of Marana Defendants and against Ryba based on qualified immunity as to the false arrest and malicious prosecution claims is appropriate.

VII. *Liability of Marana*

Marana Defendants argue:

> Plaintiff has not alleged a federal law claim against the Town Of Marana under *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978). The Town cannot be vicariously liable for the alleged actions of Officer Nelson. *Id*. at 691. There is no basis for any remaining claim against the Town of Marana.

Motion for Partial Summary Judgment (Doc. 34), p. 9. Ryba argues that Marana's policies and conduct in sweeping "under the rug" Nelson's activities and indiscretions provides for the liability of Marana.

However, Ryba's Complaint alleged a *respondeat superior* claim against Marana as to the state law claims and a negligent supervision, retention and training claim against Marana under state law. The state law claims have previously been dismissed. June 22, 2017 Order (Doc. 26), p. 8. Indeed, the Court stated:

> The claims that remain pending before the Court are the First Claim: False Arrest, the Second Claim: Malicious Prosecution, and the Third Claim: Excessive Force.

*Id*. at 9. Moreover, there is no evidence or even any allegation before the Court that anything other than isolated or sporadic incidents occurred. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (modified on other grounds); *Davis v. Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest insufficient to establish policy). The Court finds there is no basis for any remaining federal claim against Marana. Summary judgment in favor of Marana and against Ryba is appropriate.

- 10 -

Accordingly, IT IS ORDERED:

1. Marana Defendants' Motion for Partial Summary Judgment (Doc. 34) is GRANTED.
2. Summary Judgment is awarded in favor of Marana Defendants and against Ryba as to the false arrest, malicious prosecution, and any *Monell* claims.
3. No claim remaining pending against the Town of Marana, the Town of Marana is DISMISSED from this action.
4. The claim that remains pending before the Court is the Third Claim: Excessive Force.
5. As stated in the Court's March 7, 2017 and November 30, 2017 Orders, the parties shall submit a Joint Pretrial Statement/Proposed Order within thirty (30) days of the date of this Order.

DATED this 7th day of August, 2018.

_____
Cindy K. Jorgenson
United States District Judge